**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carl Andrew Ricci, | No. CV-12-0066-TUC-FRZ (BGM) |
| Petitioner, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Charles L. Ryan, *et al.*, | |
| Respondents. | |

On January 26, 2012, Petitioner Curt Andrew Ricci, who is confined in the Arizona State Prison Complex-Lewis, Morey Unit, Buckeye, Arizona, filed his Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Petition") (Doc. 1). On June 28, 2012, Respondents filed their Limited Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 11). Petitioner did not file a Traverse. The Petition is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Macdonald for Report and Recommendation. The Magistrate Judge recommends that the District Court deny the Petition.

. . .

. . .

. . .

. . .

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The Arizona Court of Appeals stated the facts[1] as follows:

> Tucson police officer Scott Glass testified he had been working undercover, investigating narcotics-related activity and prostitution in a certain area of Tucson "[b]ecause of the high narcotics complaints" for that area. Glass testified he had made contact with a prostitute named Angela at a convenience store. He stated, "[we] agreed on a prostitution deal, and I ask[ed] her if she knew where she could get crack cocaine for me." Angela made some telephone calls and directed Glass to a barbershop in a small strip mall. Glass testified further that he dropped Angela off at the barbershop, she went inside, and she came back outside with a male later identified as Ricci. Glass saw Angela give Ricci the money Glass had given to her, saw him "drop something in [Angela]'s hand," and watched him go back inside the barbershop. Angela brought Glass what was later identified as crack cocaine, and Glass gave her another twenty dollars to purchase more cocaine. Angela went back inside the barbershop and, according to Glass, "the same male that followed her out the first time followed her out again." Angela again gave the money to that person, who handed her more crack cocaine that she brought to Glass. Both times the cocaine was in a wadded up gum wrapper.

> * * *

> Glass testified that, after he had purchased the two packets of cocaine, and after he and Angela were stopped by surveillance officers, he was taken to a location where other officers had detained Ricci. Glass identified Ricci as the person he had seen going in and out of the barbershop, and he later identified Ricci in court as the same individual. Glass was "positive" Ricci was the same person.

> When Ricci was detained and searched, he had in his possession the money Glass had given Angela and crack cocaine wrapped in a gum wrapper. The arresting officer testified he had felt something "crunchy" like cereal in Ricci's shorts as he was patting Ricci down for weapons and that a plastic baggie containing thirty-four grams of cocaine was subsequently found on the ground by Ricci's foot; after that, there was no longer anything "crunchy" in Ricci's shorts.

Petition (Doc. 1), Ct. App. Mem. Decision 12/4/2009 (Exh. "1") at ¶¶ 6-8 (alterations in original).

---

[1]As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings. 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

On November 5, 2007, a grand jury indicted Petitioner, charging him with two counts of the sale and/or transfer of a narcotic drug, two counts of possession of drug paraphernalia, and one count of possession of a narcotic drug for sale.  Answer (Doc. 11), Indictment (Exh. "A").  On August 15, 2008, following a jury trial, the jury found Petitioner guilty of one count of sale and/or transfer of a narcotic drug, cocaine base, guilty of two counts of possession of drug paraphernalia, and guilty of one count of possession of a narcotic drug for sale, cocaine base.  Answer (Doc. 11), Minute Entry 8/15/2008 ("Exh. "B").  The jury found Petitioner not guilty of one count of sale and/or transfer of a narcotic drug.  *Id.*  Petitioner was sentenced to prison terms of 9.25 years, 1.75 years, 9.25 years, and 1.75 years to run concurrently.  Answer (Doc. 11), Commitment Order 9/26/2008 (Exh. "C").

### A.    Direct Appeal

On March 6, 2009, Petitioner's then counsel filed an *Anders* brief with the Arizona Court of Appeals.  Answer (Doc. 11), Appellant's Opening Br. (*Anders*) (Exh. "D").  On August 29, 2009, Petitioner filed a *pro se* Supplemental Brief.  Petition (Doc. 1) Appellant's Suppl. Br. (Exh. "2").  Division Two of the Arizona Court of Appeals affirmed the trial court judgment and sentence, with a correction to the sentencing minute entry regarding the statutory reference for the repetitive nature of the offenses.  Petition (Doc. 1), Exh. "1" at ¶ 19; *see also* Answer (Doc. 11), Exh. "D" at 11.  Petitioner did not file a motion for reconsideration or petition for review, and as such, Division Two of the Arizona Court of Appeals issued its Mandate on January 27, 2010.  Answer (Doc. 11), Mandate (Exh. "E").

### B.    Post-Conviction Relief Proceeding

On February 5, 2010, Petitioner filed his Notice of Post-Conviction Relief ("PCR").  Answer (Doc. 11), Notice of PCR (Exh. "F").  On September 23, 2010, Petitioner's then counsel subsequently filed a Notice of Completion Pursuant to Rule 32 & Motion for Extension of Time for *Pro Se* Petition; Motion to Withdraw.  Answer (Doc. 11), Exh. "G."  On September 27, 2010, the Arizona Superior Court in Pima County granted counsel's motion to withdraw and gave Petitioner forty-five (45) days to file his *pro se* PCR petition.  Answer (Doc. 11), Order 9/27/2010 (Exh. "H").  On November 23, 2010, the trial court

1    dismissed Petitioner's PCR proceeding, because Petitioner had neither filed a *pro se* PCR
2    petition, nor sought an extension of time to do so.  Answer (Doc. 11), Chambers Ruling
3    11/23/2010 (Exh. "I").

4              On October 13, 2011, Petitioner wrote a letter to the trial court requesting an extension
5    of time to file his PCR petition.  Answer (Doc. 11), Ltr. from Ricci to Clerk of Pima Co.
6    Superior Ct. 10/13/2011 (Exh. "J").  On October 26, 2011, the trial court denied Petitioner's
7    request.  Answer (Doc. 11), Order 10/26/2011 (Exh. "K").

8              **C.    *The Instant Habeas Proceeding***

9              On January 26, 2012, Petitioner filed a Petition for Writ of Habeas Corpus by a Person
10   in State Custody Pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Petitioner asserts a single basis for
11   relief:  that there was a violation of his due process rights concerning evidence in his case,
12   because the trial court precluded him from presenting evidence regarding a police department
13   employee who had been stealing drugs from the evidence locker.  Petition (Doc. 1) at 6.
14   Petitioner further asserted that there was a three (3) gram discrepancy between the amount
15   of crack cocaine reportedly seized at the time of his arrest and the amount of crack cocaine
16   reportedly tested in the police laboratory.  *Id.*  On June 27, 2012, Respondents filed their
17   Limited Answer to Petition for Writ of Habeas Corpus (Doc. 11) pursuant to the Court's
18   March 15, 2012 Order (Doc. 3).  As such, Respondents' Answer is limited to affirmative
19   defenses.  *See* Answer (Doc. 11).  Petitioner did not file a reply.

20

21   **II.    STANDARD OF REVIEW**

22             **A.    *In General***

23             The federal courts shall "entertain an application for a writ of habeas corpus in behalf
24   of a person in custody pursuant to the judgment of a State court only on the ground that he
25   is in custody *in violation of the Constitution or laws or treaties of the United States*."  28
26   U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus by a person in
27   state custody:

28

- 4 -

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, — U.S. — , 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). Correcting errors of state law is not the province of federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Ultimately, "[t]he statute's design is to 'further the principles of comity, finality, and federalism.'" *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S.Ct. 2842, 2854, 168 L.Ed.2d 662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)). Furthermore, this standard is difficult to meet and highly deferential "for evaluating state-court rulings, [and] which demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 131 S.Ct. at 1398 (citations and internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review. *See* 28 U.S.C. § 2254. "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013). Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigen*, 550 U.S. 465, 473-74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)). Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect. *Id.*, 550 U.S. at —, 127 S.Ct. at 1939; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013). Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result. *See Harrington v. Richter*, — U.S. —, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams v. Taylor*, 529 U.S.

1  362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905

2  (9ᵗʰ Cir. 2004).  "AEDPA requires 'a state prisoner [to] show that the state court's ruling on

3  the claim being presented in federal court was so lacking in justification that there was an

4  error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S.Ct. at 10

5  (quoting *Harrington*, 562 U.S. at —, 131 S.Ct. at 786-87) (alterations in original).

6  ### B.    Exhaustion of State Remedies

7  Prior to application for a writ of habeas corpus, a person in state custody must exhaust

8  all of the remedies available in the State courts.  28 U.S.C. § 2254(b)(1)(A).  This "provides

9  a simple and clear instruction to potential litigants: before you bring any claims to federal

10  court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509,

11  520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).  As such, the exhaustion doctrine gives

12  the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal

13  rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004)

14  (internal quotations omitted).  Moreover, "[t]he exhaustion doctrine is principally designed

15  to protect the state courts' role in the enforcement of federal law and prevent disruption of

16  state judicial proceedings." *Rose v. Lundy*, 455 U.S. at 518, 102 S.Ct. at 1203 (internal

17  citations omitted).  This upholds the doctrine of comity which "teaches that one court should

18  defer action on causes properly within its jurisdiction until the courts of another sovereignty

19  with concurrent powers, and already cognizant of the litigation, have had an opportunity to

20  pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590,

21  94 L.Ed. 761 (1950)).

22  Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as

23  the applicant "has the right under the law of the State to raise, by any available procedure the

24  question presented."  28 U.S.C. § 2254(c).  "[O]nce the federal claim has been fairly

25  presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404

26  U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).  The fair presentation requirement

27  mandates that a state prisoner must alert the state court "to the presence of a federal claim"

28  in his petition, simply labeling a claim "federal" or expecting the state court to read beyond

the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds). Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court." *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349. "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, §23.3b (4th ed. 1998)).

In Arizona, however, for "cases not carrying a life sentence or the death penalty, review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998). Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review. *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

### C.    *Procedural Default*

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991). Moreover, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the

federal question and adequate to support the judgment." *Id.*, 501 U.S. at 728, 111 S.Ct. at 2554. This is true whether the state law basis is substantive or procedural. *Id.* (citations omitted). Such claims are considered procedurally barred from review. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The Ninth Circuit explained the difference between exhaustion and procedural default as follows:

> The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law. In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted). Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default. *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991))).

*Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005). Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways. First, where the petitioner presented his claims to the state court, which denied relief based on independent and adequate state grounds. *Coleman*, 501 at 728, 111 S.Ct. at 2254. Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.* Second, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1, 111 S.Ct. at 2557 n.1 (citations omitted). Thus, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quoting *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (emphasis in original).

Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial."). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims."). In addition to cause, a habeas petitioner must show actual prejudice, meaning that he "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494, 106 S.Ct. at 2648 (emphasis in original) (internal quotations omitted). Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.*, 106 S.Ct. at 2649.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoting *Engle v. Isaac* 456 U.S. 107, 135, 102 S.Ct. 1558, 1572-73, 71 L.Ed.2d 783 (1982)). "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'" *Herrara v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d

203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)).  Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404, 113 S.Ct. at 862.  Further, in order to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial, on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(3).  "If an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently' waived the claim." *Id.*, 2002 cmt.  Neither Rule 32.2 nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver.  *See id.*; *See also Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002).  The Ninth Circuit recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations." *Cassett*, 406 F.3d at 622.

## III.    STATUTE OF LIMITATIONS

### A.    *Timeliness*

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitations. *See White v. Klitzkie*, 281 F.3d 920, 921-22 (9th Cir. 2002).  The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody.  28 U.S.C. § 2244(d)(1).  Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

1

(B)     the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

2

3

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4

5

6

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

7

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).  "The time

8

during which a properly filed application for State post-conviction or other collateral review

9

with respect to the pertinent judgment or claim is pending shall not be counted toward any

10

period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

11

The other subsections being inapplicable, Petitioner must have filed his habeas

12

petition within one year from "the date on which the judgment became final by the

13

conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C.

14

§ 2244(d)(1)(A); *see also McQuiggin v. Perkins*, – U.S. –, 133 S.Ct. 1924, 1929, 185 L.Ed.2d

15

1019 (2013).  Petitioner's judgment became final "when his time for seeking review with the

16

State's highest court expired." *Gonzalez v. Thaler*, – U.S. –, 132 S.Ct. 641, 654, 181 L.Ed.2d

17

619 (2012); *see also Hemmerle v. Schriro*, 495 F.3d 1069, 1074-75 (9th Cir. 2007).  Pursuant

18

to Arizona law, Petitioner had thirty (30) days after the adverse decision by the Arizona

19

Court of Appeals to seek review by the Arizona Supreme Court.  Ariz. R. Crim. P. 31.19(a).

20

The Arizona Court of Appeals denied Petitioner's direct appeal on December 4, 2009.

21

Accordingly, Petitioner's judgment became final thirty (30) days later, on January 4, 2010.

22

*See* Ariz. R. Crim. P. 1.3(a) (tolling deadlines to the next business day if the last day of the

23

deadline falls on a Saturday, Sunday, or legal holiday).

24

Pursuant to the AEDPA, Petitioner's one-year limitation period expired, absent

25

tolling, on January 4, 2011.  *See Gonzalez*, 132 S.Ct. at 653-54.  Petitioner filed his Petition

26

(Doc. 1) on January 26, 2012.  Therefore, absent tolling, the Petition (Doc. 1) is untimely.

27

. . .

28

. . .

- 11 -

1

### B.   Statutory Tolling of the Limitations Period

2   The limitations period is tolled during the time in "which a properly filed application

3   for State post-conviction or other collateral review with respect to the pertinent judgment or

4   claim is pending[.]" 28 U.S.C. § 2244(d)(2); *Allen*, 552 U.S. at 4, 128 S.Ct. at 3.   An

5   application for State post-conviction relief is "'properly filed' when its deliver and

6   acceptance are in compliance with the applicable laws and rules governing filings." *Artuz*

7   *v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 364, 148 L.Ed.2d 213 (2000).   Moreover, if a state

8   court rejects a petitioner's PCR petition as untimely, it cannot be "properly filed" and the

9   petitioner is not entitled to statutory tolling.   *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125

10   S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005).

11   "[I]n Arizona, post-conviction 'proceedings begin with the filing of the Notice.'"

12   *Hemmerle*, 495 F.3d at 1074 (quoting *Isley v. Arizona Dept. of Corrections*, 383 F.3d 1054

13   (9th Cir. 2004)).   Petitioner filed his Notice of Post-Conviction Relief on February 5, 2010.

14   Answer (Doc. 11), Exh. "F."   This PCR notice was "properly filed," and therefore tolled

15   AEDPA's one-year statute of limitations until it was summarily dismissed on November 23,

16   2010.   Answer (Doc. 11), Exh. "I;" *Hemmerle*, 495 F.3d at 1074.   The new deadline for

17   Petitioner's Petition was November 23, 2011; however, it was not filed until January 26,

18   2012.   As such, Petitioner's Petition (Doc. 1) is untimely.

19

### C.   Equitable Tolling of the Limitations Period

20   The Supreme Court of the United states has held "that § 2244(d) is subject to equitable

21   tolling in appropriate cases."   *Holland v. Florida*, – U.S. – , 130 S.Ct. 2549, 2560, 177

22   L.Ed.2d 130 (2010).   The Ninth Circuit Court of Appeals "will permit equitable tolling of

23   AEDPA's limitations period 'only if extraordinary circumstances beyond a prisoner's control

24   make it impossible to file a petition on time.'" *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.

25   1999) (*quoting Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530, 541 (9th Cir.

26   1998) (en banc), *cert. denied*, 526 U.S. 1060, 119 S.Ct. 1377, 143 L.Ed.2d 535 (1999)

27   (citations omitted)).   Moreover, Petitioner "bears the burden of establishing two elements:

28   (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

1  circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807,
2  1814, 161 L.Ed.2d 669 (2005); *see also Holland*, 130 S.Ct. at 2562 (quoting *Pace*).

3  　　　　Here, Petitioner has failed to meet his burden.  The record before this Court is devoid
4  of any evidence to demonstrate that Petitioner is entitled to equitable tolling.  Petitioner
5  waited nearly eleven (11) months to seek an extension of time to file his *pro se* PCR petition.
6  Answer (Doc. 11), Exh. "J."  Petitioner also asserts that he wrote a letter to this Court on
7  November 21, 2011 seeking additional time to file his Petition; however, the Court does not
8  have a record of this request.  In light of Petitioner's long delay in seeking additional time
9  to file his *pro se* PCR complaint, it cannot be said that he pursued his rights diligently.
10  Accordingly, Petitioner's habeas petition is untimely.

11

12  **IV.    RECOMMENDATION**

13  　　　　For the reasons delineated above, the Magistrate Judge recommends that the District
14  Judge enter an order DENYING the Petition Under 28 U.S.C. § 2254 for a Writ of Habeas
15  Corpus by a Person in State Custody (Doc. 1).

16  　　　　Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil
17  Procedure, any party may serve and file written objections within fourteen (14) days after
18  being served with a copy of this Report and Recommendation.  A party may respond to
19  another party's objections within fourteen (14) days after being served with a copy. Fed. R.
20  Civ. P. 72(b)(2).  If objections are not timely filed, they may be deemed waived.  If
21  objections are filed, the parties should use the following case number: **CV-12-0066-TUC-**
22  **FRZ**.

23  　　　　DATED this 20th day of February, 2015.

Bruce G. Macdonald
United States Magistrate Judge

- 13 -